## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**THEODORE W. BAKER,**

        **Plaintiff,**

        **v.**                                    **Civil Action No. 3:23-cv-710**

**LUKE M. STOVER,**

        **and**

**COLONEL JEFFREY S. KATZ,**

        **Defendants.**

### <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Defendant Colonel Jeffrey S. Katz's ("Col. Katz") Motion to Dismiss Colonel Jeffrey S. Katz (the "Motion to Dismiss" or "Motion").[1] (ECF No. 4.) Plaintiff Theodore W. Baker responded in opposition to the Motion, (ECF No. 6), and Col. Katz replied, (ECF No. 7).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons articulated below, the Court will grant the Motion. (ECF No. 4.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

## I.  Factual and Procedural Background[2]

Relevant to this Motion, Mr. Baker brings this action against Col. Katz for violations of 42 U.S.C. § 1983 ("Section 1983").[3]  (ECF No. 1-1, at 12–17.)

### A.      Factual Allegations

Mr. Baker is a resident of Chesterfield County, Virginia.  (ECF No. 1-1 ¶ 1.)  Mr. Baker's claims stem from his February 3, 2023 arrest by Chesterfield County Police Officer Luke M. Stover ("Officer Stover").  (ECF No. 1-1 ¶¶ 6, 8–14, 18.)  Since 2018, Defendant Col. Katz has worked as the Chief of Police for the Chesterfield County Police Department.  (ECF No. 1-1 ¶¶ 4, 82.)

### 1.      Mr. Baker's February 3, 2023 Arrest

On February 3, 2023, multiple Chesterfield County police officers, including Officer Stover, arrived at Mr. Baker's home in response to a domestic assault complaint submitted by

---

[2] In considering the Motion to Dismiss, (ECF No. 4), the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Mr. Baker.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

[3] This statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

2

Mr. Baker's ex-girlfriend. (ECF No. 1-1 ¶¶ 8–11.) When the officers approached Mr. Baker's

residence, they encountered Mr. Baker's ex-girlfriend in a vehicle outside the residence. (ECF

No. 1-1, ¶¶ 9–10.) At this time, "none of [the officers] observed physical signs of an assault."

(ECF No. 1-1, ¶ 10.) The responding officers then entered Mr. Baker's residence, and Officer

Stover then "grabbed Mr. Baker . . . briefly pinning him against the stairs before moving [him]

outside the front porch." (ECF No. 1-1, ¶ 12.) "Prior to being physically restrained with

handcuffs behind his back, Mr. Baker did not resist, assault, or otherwise impede the

investigation of [Officer] Stover or other police officers." (ECF No. 1-1 ¶ 13.) While Mr. Baker

was on the porch in handcuffs, Officer Stover, "without warning or provocation, wrenched Mr.

Baker's right shoulder, instantly tearing Mr. Baker's right rotator cuff and labrum." (ECF No.

1-1 ¶ 14.) As a result, Mr. Baker "sustained significant injuries to his shoulder, requiring surgery

and subsequent medical treatment." (ECF No. 1-1 ¶ 18.) Another officer on the scene told a

third officer that Officer Stover was being "too aggressive" or something similar. (ECF No. 1-1

¶ 28.) Officer Stover's actions were "intentional, willful, malicious, and done with the purpose

of inflicting physical harm to [him]." (ECF No. 1-1 ¶ 25.)

Mr. Baker was later charged with obstruction of justice and assaulting a law enforcement

officer. (ECF No. 1-1 ¶ 15.) The Commonwealth's Attorney moved to dismiss, or *nolle

prosequi*, both charges. (ECF No. 1-1 ¶ 16.)

### 2.    <u>Allegations Specific to Col. Katz</u>

As Chief of Police for the Chesterfield County Police Department, at all times relevant to

this action, "[Col.] Katz had policymaking authority and otherwise controlled the training and

supervisory practices of [the] Chesterfield County Police Department." (ECF No. 1-1 ¶¶ 83, 90.)

Mr. Baker states that, "[u]pon information and belief, [Col.] Katz has a policy, practice and

3

custom of failing to train and supervise police officers regarding an obvious constitutional duty implicated in a recurrent situation that police officers face; namely, the routine handcuffing of individuals who pose no threat to officers, or risk of flight." (ECF No. 1-1 ¶ 91.)  Mr. Baker adds that ""[b]y adopting [a] policy, practice and custom of failing to train and supervise his police officers to prevent the use of excessive force, [Col.] Katz acted with deliberate indifference to Mr. Baker's constitutional rights." (ECF No. 1-1 ¶ 95.)  Additionally, Col. Katz had actual or constructive knowledge that Officer Stover "posed a pervasive and unreasonable risk of constitutional injuries to citizens like Mr. Baker" and had a "propensity to violate citizens' constitutional rights[.]" (ECF No. 1-1 ¶¶ 97–98.)[4]

Mr. Baker contends that after Col. Katz assumed his role as Chief of Police, "his policies seem to encourage rather than qualm violence within Chesterfield[.]" (ECF No. 1-1 ¶ 84.)  He further states that, ""[u]pon information and belief, [Col.] Katz has a policy, practice and custom of failing to train and supervise police officers regarding an obvious constitutional duty

---

[4] While the Court notes that Mr. Baker alleges that "[Col.] Katz appears to react to perceived slights by taking to the airways, publicly lashing out against other members of the Chesterfield community", (ECF No. 1-1 ¶ 85), he does so in a manner that this Court cannot credit even reading his allegations favorably.  For example, Mr. Baker points to a July 2021 press conference during which Col. Katz stated in response to a judge's reversal of a conviction that: "'The people who are responsible for the reappointment of the judge will have to take that into consideration going forward." (ECF No. 1-1 ¶ 86.)  Mr. Baker characterizes this response as an "invit[ation]" to "the public to revolt against a sitting judge because the Court's reversal of a conviction angered [Col.] Katz." (ECF No. 1-1 ¶ 86.)  Plainly, it is not.

Mr. Baker also cites a statement by Col. Katz about a decision not to charge a megachurch pastor for prostitution.  Col. Katz publicly said:  "'As I have shared with our Commonwealth's Attorney, I believe a public articulation of her rationale is warranted.  Absent a reasonable explanation, any discontent associated with the handling of this case should be directed to the Commonwealth's Attorney.'" (ECF No. 1-1 ¶ 87 (emphasis omitted).)  While Mr. Baker offers this vignette as a purported example of Col. Katz "inviting the community to rise up against his own Commonwealth's Attorney", (ECF No. 1-1 ¶ 87), it plainly is not.  Even read favorably, this statement does not invite the community to "rise up" at all.

implicated in a recurrent situation that police officers face; namely, the routine handcuffing of individuals who pose no threat to officers, or risk of flight." (ECF No. 1-1 ¶ 91.)  Mr. Baker contends that "[b]y adopting this policy, practice and custom of failing to train and supervise his police officers to prevent the use of excessive force, [Col.] Katz acted with deliberate indifference to Mr. Baker's constitutional rights." (ECF No. 1-1 ¶ 95.)

Chesterfield County police officers "have a history of numerous complaints related to excessive force, including, but not limited to violence after subjects are handcuffed, and/or violence during 'routine' traffic stops[.]" (ECF No. 1-1 ¶ 94.)  For instance, a Chesterfield County police officer, "Officer Painter", testified in 2020 that he was taught to utilize a "distraction technique" of punching non-cooperative individuals during routine traffic stops. (ECF No. 1-1 ¶ 89; ECF No. 1-1, at 14 n.5.)

Finally, Col. Katz "has a custom of failing to discipline officers who use excessive force", and failed to discipline Officer Stover for use of excessive force against Mr. Baker.  (ECF No. 1-1 ¶¶ 106, 109.)  Mr. Baker asserts that, due to Col. Katz's "fail[ure] to supervise and discipline police officers who use excessive force, [Col.] Katz acted with deliberate indifference to" Mr. Baker's and other citizens' "clearly established [Constitutional] rights[.]" (ECF No. 1-1 ¶ 111.)

**B.**     **Procedural Background**

On September 21, 2023, Mr. Baker filed a Complaint against Officer Luke M. Stover and Col. Katz in the Circuit Court of Chesterfield County, Virginia.  (ECF No. 1, at 1; ECF No. 1-1.)

Mr. Baker brings eight Counts in his Complaint, two of which apply to Col. Katz.[5]

**Count VII:**     42 U.S.C. § 1983, Failure to Train (Count VII(a)) and Supervise (Count VII(b)).[6]

**Count IX:**     42 U.S.C. § 1983, Failure to Discipline.

(ECF No. 1-1 ¶¶ 81–116.)

On October 26, 2023, Defendants Luke M. Stover and Col. Katz properly removed Mr. Baker's case to this Court based on federal question jurisdiction under 28 U.S.C. § 1331.[7] (ECF No. 1, at 2.) Following removal, on February 14, 2024, Mr. Stover filed an Answer. (ECF No. 3.) Later that same day, Col. Katz filed a Motion to Dismiss. (ECF No. 4.) Mr. Baker responded, (ECF No. 6), and Col. Katz replied, (ECF No. 7).

For the reasons articulated below, the Court will grant the Motion. (ECF No. 4.)

## II. Standard of Review

### A.     Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

---

[5] The Complaint provides eight Counts but labels the eighth Count as "Count Nine." (ECF No. 1-1 ¶¶ 20–116.) The Court will refer to the eighth Count as "Count IX." (ECF No. 1-1, at 16.) In addition to bringing two Counts against Col Katz, Mr. Baker brings six Counts solely against Mr. Stover: Count I (42 U.S.C. § 1983, Excessive Force in Violation of the Fourth Amendment); Count II (42 U.S.C. § 1983, False Arrest in Violation of the Fourth Amendment); Count III (Malicious Prosecution); Count IX (Assault); Count V (Battery); and Count VI (False Imprisonment). (ECF No. 1-1, at 6–12.)

[6] The Court will construe Count VII as two separate Counts: (1) Count VII(a), 42 U.S.C. § 1983, Failure to Train; and (2) Count VII(b), 42 U.S.C. § 1983, Failure to Supervise.

[7] Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").  Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555.  Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted).  The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

7

## III.  Analysis

Col. Katz seeks relief on the following grounds:  (1) Mr. Baker fails to state a claim for failure to train under a theory of municipal liability (Count VII(a)); (2) Mr. Baker fails to state a claim for failure to discipline under a theory of municipal liability (Count IX); and (3) Mr. Baker fails to state a claim for failure to supervise under a theory of supervisory liability (Count VII(b)).  (ECF No. 5, at 5–6, 12, 15.)

Accepting Mr. Baker's factual allegations as true and drawing all reasonable inferences in his favor, as the Court must do at the motion to dismiss stage, Mr. Baker fails to state any claim against Col. Katz.  The Court will grant the Motion to Dismiss without prejudice at this time.

### A.    Mr. Baker Fails to State a Claim for Failure to Train Under 42 U.S.C. § 1983 (Count VII(a))

Although Count VII lists "Failure to Train and Supervise" as a single Count, the Court will construe this Count as separate claims for (1) a failure to train under a theory of municipal liability (Count VII(a)), and (2) a claim against Col. Katz in his individual capacity under a theory of supervisory liability (Count VII(b)).[8]  The Court now turns to Mr. Baker's claim for failure to train under a theory of municipal liability, and will discuss the latter claim in Section III.C, below.

Mr. Baker flatly asserts that Chesterfield County's police training is deficient, meaning that its officers, including Officer Stover, lacked the necessary training regarding their use of

---

[8] Both parties divide Count VII in this fashion.  In support of his Motion to Dismiss, Col. Katz construes Count VII as two claims.  (ECF No. 5, at 5.)  In his Opposition, Mr. Baker also separately discusses a claim for failure to train under a theory of municipal liability and a claim against Col. Katz under a theory of supervisory liability.  (ECF No. 6, at 6, 8–9.)  The Court will address supervisory liability later in its analysis.

force. Mr. Baker cannot bring a failure to train claim premised on his conclusory allegations and formulaic recitation of elements without some plausible facts suggesting an official policy or custom existed. Fatal to his claim, he fails to address any specific facts regarding the adequacy of Chesterfield County's training program, and instead merely discusses various scenarios for which he claims Chesterfield County's training is deficient. Additionally, even if Mr. Baker had identified a specific deficiency, he fails to establish that Chesterfield County acted with deliberate indifference to Mr. Baker's constitutional rights. Thus, Mr. Baker cannot bring his Section 1983 *Monell* claim on the basis of a failure to train. *See Jackson v. Town of Farmville*, No. 3:22CV729 (MHL), 2023 WL 3871697, at *7 (E.D. Va. June 7, 2023). The Court will dismiss Count VII to the extent it is based on a failure to train.

### 1.    Legal Standard: *Monell* Liability, Generally

A Section 1983 suit against a police chief in his or her official capacity is treated as a suit against the locality itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). "For purposes of Section 1983, a municipality is considered a 'person' and thus is subject to suit." *Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Although an underlying constitutional violation is a necessary element of municipal liability, it is not sufficient: a municipality cannot "be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 553–54 (quoting *Monell*, 436 U.S. at 691). Liability will arise "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible [for] under § 1983." *Id.* at 554 (quoting *Monell*, 436 U.S. at 694). "[I]t is plain that municipal liability may be imposed for a single decision by

municipal policymakers under appropriate circumstances." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

The United States Court of Appeals for the Fourth Circuit has identified four avenues through which a § 1983 plaintiff may demonstrate municipal liability for a policy or custom:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens[;"] or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

### 2.   <u>Legal Standard:  Failure to Train Under 42 U.S.C. § 1983</u>

A municipality's *Monell* liability "is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  A municipality's failure to train may support Section 1983 liability where the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), and is the "moving force [behind] the constitutional violation." *Id.* at 389 (internal quotations omitted).  "This municipal liability theory thus has two components in addition to an underlying constitutional violation:  deliberate indifference and causation." *Jackson*, 2023 WL 3871697, at *8.

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (citations omitted).  "A showing of simple or even heightened negligence will not suffice." *Bd. of Cnty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997).  Rather, to amount to "deliberate indifference," a failure to train must reflect the municipality's "conscious disregard

for the consequences of their action[.]" *Id.* at 407. A "deliberate" choice requires that the municipality have "fair notice that subordinates are engaged in constitutional or statutory deprivations" and regardless "consciously chose[] a particular course of action in response." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 703 (E.D. Va. 2004) (citing *Harris*, 498 U.S. at 389).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (citing *Bryan Cnty.*, 520 U.S. at 409). Plaintiffs may establish deliberate indifference in two ways. First, they may show that "policymakers were aware of, and acquiesced in, a pattern of constitutional violations." *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 538 (E.D. Va. 2015) (quoting *Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F. Supp. 3d 721, 726 (E.D. Va. 2014)). The Fourth Circuit has explained that "a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of [his or] her specific injury or that it was the moving force behind [his or] her deprivation." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). "Unfocused evidence of unrelated constitutional violations is simply not relevant to the question of whether a municipal decisionmaker caused the violation of the specific federal rights of the plaintiff before the court." *Id.* at 218–19.

Second, in limited circumstances, plaintiffs may demonstrate that the municipality has failed to train its employees on "an obvious constitutional duty that particular employees are certain to face." *Moody*, 93 F. Supp. 3d at 538 (quoting *Gallimore*, 38 F. Supp. 3d at 726). This second method is limited, however, to a "narrow scope" of constitutional duties. *Tobey v. Napolitano*, 808 F. Supp. 2d 830, 843 (E.D. Va. 2011). "Only in the rarest of circumstances may 'the unconstitutional consequences of failing to train . . . be so patently obvious that a city could

11

be liable under § 1983 without proof of a pre-existing pattern of violations.'" *Chennault v. Mitchell*, 923 F. Supp. 2d 765, 787 (E.D. Va. 2013) (quoting *Connick*, 563 U.S. at 64) (emphasis added).

Finally, a plaintiff must also demonstrate a "causal nexus" between the deficient training and the alleged constitutional violation. *Brown*, 308 F. Supp. 2d at 694.   "This requires first that a specific deficiency rather than general laxness or ineffectiveness in training be shown." *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987).  Generally, a plaintiff cannot demonstrate a causal connection "by proof of a single incident of unconstitutional activity alone." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994).  Rather, a plaintiff must show that the "deficiency in training actually caused" the violation. *Canton*, 489 U.S. 378, 391. However, in limited cases, a single incident can constitute support for a causal connection where the constitutional duty is so obvious that without proper training, "the specific violation [was] 'almost bound to happen, sooner or later.'" *Spell*, 824 F.2d at 1390 (citing *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985)).

### 3.   Mr. Baker Has Not Alleged Sufficient Facts to Support a Claim for Failure to Train Under 42 U.S.C. § 1983

Mr. Baker's Complaint fails to set forth sufficient facts to establish *Monell* liability under a failure to train theory.  Because Mr. Baker provides only conclusory allegations as to this claim, it must falter.

As a threshold matter, Mr. Baker fails to identify a "specific deficiency rather than general laxness or ineffectiveness in training." *Spell*, 824 F.2d at 1390.  Mr. Baker addresses Chesterfield County's deficient training as to the "right to be free from an unreasonable seizure and the use of excessive force" in three circumstances:  (1) "the routine handcuffing of individuals who pose no threat to officers, or risk of flight"; (2) the use of force applied after

12

handcuffing an individual; and (3) officers' "utilization of restraining individuals." (ECF No. 1-1 ¶¶ 91, 94–95.) Mr. Baker fails to identify any specific deficiency in the training regarding these varied scenarios, nor does he address any aspect of Chesterfield County's training program at all. Instead, he flatly and repeatedly asserts that Chesterfield County's training is deficient.[9] (ECF No. 1-1 ¶¶ 91, 93–95, 99.) This is plainly insufficient to support a claim for failure to train. *See City of Canton*, 489 U.S. at 390 ("The focus [for determining *Monell* liability] must be on adequacy of the training program in relation to the tasks the particular officers must perform."); *see also Peters v. City of Mount Rainier*, No. 14-0955, 2014 WL 4855032, at *5 (D. Md. Sept. 29, 2014) (granting motion to dismiss failure to train claim where plaintiff "simply stated in broad, conclusory terms and in a variety of different ways that the City failed to train and supervise its officers.")

Second, even if Mr. Baker had identified a specific deficiency, he fails to establish that Chesterfield County, through Col. Katz, acted with deliberate indifference to Mr. Baker's constitutional rights. As explained above, one manner by which a plaintiff may establish deliberate indifference is by showing that "policymakers were aware of, and acquiesced in, a pattern of constitutional violations." *Moody*, 93 F. Supp. 3d at 538 (quoting *Gallimore*, 38 F.

---

[9] As noted above, instead of identifying a specific policy or custom, Mr. Baker asks the Court to consider "[Col.] Katz's public comments criticizing the decisions of a sitting judge and Commonwealth's Attorney", which he argues "not only undermine the rule of law but also signal a permissive attitude towards unconstitutional practices within the police force" and "can be interpreted as fostering an atmosphere of lawlessness and aggressive policing, implicitly endorsing the kind of constitutional violations experienced by Mr. Baker." (ECF No. 6, at 5 (citing ECF No. 1-1 ¶¶ 85–89)).

Mr. Baker fails to identify any case law in support of this request. In any event, these public comments are wholly unrelated to Mr. Baker's arrest, do not relate to the use of excessive force, and do not provide any insight as to Chesterfield County's training policies or customs. As such, Mr. Baker has not identified, and the Court is unable to discern, any plausible connection between Col. Katz's public statements and Mr. Baker's arrest and subsequent injury.

13

Supp. 3d at 726).  Mr. Baker's scattershot allegations fail to plausibly allege a pattern of similar

constitutional violations that arose out of the purported training deficiency.  *Connick*, 563 U.S. at

62.  Mr. Baker lobs conclusory allegations regarding prior misconduct by Chesterfield County

police officers and Officer Stover, but fails to provide any factual support regarding these

allegations.  (*See* ECF No. 1-1 ¶ 94 ("[O]fficers employed by [Col.] Katz have a history of

numerous complaints related to excessive force"); ECF No. 1-1 ¶¶ 97–98 ("[Officer Stover]

posed a pervasive and unreasonable risk of constitutional injuries" and had a "propensity to

violate citizens' constitutional rights").)

      While Mr. Baker alleges that that a Chesterfield County police officer, "Officer Painter",

testified that he was taught to punch individuals in the face as a distraction technique if they fail

to cooperate during routine traffic stops, (ECF No. 1-1 ¶ 89, ECF No. 1-1, at 14 n.5), this

allegation is wholly unrelated to Mr. Baker's arrest.[10]  "Unspecific or unrelated complaints" of

police misconduct are insufficient to establish deliberate indifference.  *Carter*, 164 F.3d at 219.

Moreover, a single incident of prior misconduct is insufficient to demonstrate a pattern of

constitutional violations necessary to support a failure to train claim.  *See, e.g.*, *Connick*, 563

U.S. at 62 (four prior incidents of misconduct insufficient to establish necessary pattern); *Lytle*,

326 F.3d at 474 (three prior incidents insufficient); *Carter*, 164 F.3d at 221 (one prior incident

insufficient); *Jackson*, 2023 WL 3871697, at *8 (one prior incident insufficient).

      Having concluded that Mr. Baker fails to establish "deliberate indifference" by presenting

a pattern of constitutional violations, the Court now turns to whether Mr. Baker establishes

---

[10] Mr. Baker's arrest arose from a complaint of domestic assault, not a routine traffic stop.  (ECF No. 1-1 ¶¶ 8–14.)  And in any event, Mr. Baker contends that he cooperated fully during his arrest, and does not claim that any officer punched him at any time.  (ECF No. 1-1 ¶¶ 13–14.)

14

"deliberate indifference" on the theory that Chesterfield County has a policy of failing to train officers on "an obvious constitutional duty that particular employees are certain to face." *Jackson*, 2023 WL 3871697, at *8. He does not. Mr. Baker simply states that Col. Katz failed to provide "proper training" and failed to "adequately supervise" officers. (ECF No. 1-1 ¶¶ 93–94.) These formulaic recitations of the elements of this charge plainly do not qualify as the "rarest of circumstances" in which a plaintiff can establish deliberate indifference in the absence of a pattern of constitutional violations. *Chennault*, 923 F. Supp. 2d at 787. As this Court has previously articulated, "to allow a plaintiff to establish municipal liability by merely reciting the theory's elements would be to 'functionally expose the [municipality] to *respondeat superior* liability, which has been explicitly foreclosed by *Monell*." *Wynn v. City of Richmond*, No. 3:21CV530 (MHL), 2022 WL 2318497, at *13 (E.D. Va. June 28, 2022) (quoting *Lee v. City of Richmond, Va.*, No. 3:12CV471 (REP), 2013 WL 1155590, at *7 (E.D. Va. Mar. 19, 2013).)

In sum, Mr. Baker's "naked assertions of wrongdoing" cannot carry the day even at this procedural juncture absent "some factual enhancement within the complaint to cross the line between *possibility* and *plausibility* of entitlement to relief." *See Giacomelli*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted) (emphasis added). Mr. Baker utterly fails to provide such factual enhancement here, and therefore fails to state a claim for failure to train under Count VII. *See Connick*, 563 U.S. at 61 ("[A] municipality's failure to train its employees in a relevant respect *must* amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact . . . . Only then 'can such a shortcoming be . . . actionable under § 1983.'" (quoting *Canton*, 489 U.S. at 388–89) (emphasis added).)

15

**B.      Mr. Baker Fails to State a Claim for Failure to Discipline Under 42 U.S.C. § 1983 (Count IX)**

Mr. Baker's allegations regarding his failure to discipline claim are similarly—and fatally—conclusory. Mr. Baker fails to identify an official policy or a widespread pattern of unconstitutional conduct that caused his injury. He does not allege that the specific officers who received excessive force complaints pre-dating Mr. Baker's injury were not properly disciplined. Rather, Mr. Baker again provides a formulaic recitation of the elements of this claim. The Court will dismiss Count IX.

**1.      Legal Standard:  Failure to Discipline Under 42 U.S.C. § 1983**

A plaintiff may establish a custom or practice under *Monell* by relying on a failure to discipline prior bad acts. *Spell*, 824 F.2d at 1389–90. This is also known as "condonation." *Id.* at 1390.

A failure to discipline claim requires a plaintiff to prove a "'persistent and widespread practice of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014) (quoting *Spell*, 824 F.2d at 1386–91). Both knowledge and deliberate indifference depend on the "extent" of prior misconduct. *Id.* at 402–03 (quoting *Spell*, 824 F.2d at 1391). "Sporadic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Id.* at 403 (quoting *Spell*, 824 F.2d at 1387); *see also Green v. Mills*, No. 3:19CV906 (MHL), 2020 WL 2850177, at *11 (E.D. Va. June 2, 2020) ("'Evidence of a single instance in which there was a failure to discipline is insufficient.'") (quoting 13 Am. Jur. Proof of Facts 3d 1, § 12 (2020)). Finally, a plaintiff must demonstrate that

16

the municipality's failure to address the misconduct through appropriate disciplinary measures caused the plaintiff's injury. *Spell*, 824 F.2d at 1389.

### 2. Mr. Baker Fails to State a Claim for Failure to Discipline Under 42 U.S.C. § 1983

Mr. Baker only recites a failure to discipline claim in formulaic terms. Without providing any additional facts or elaboration, he broadly states that "[Col.] Katz has a custom of failing to discipline officers who use excessive force." (ECF No. 1-1 ¶ 106; *see also* ECF No. 1-1 ¶ 110.) As discussed in Section III.A.3, Mr. Baker provides general allegations regarding "complaints related to excessive force", including "violence after subjects are handcuffed", as well as one specific allegation, disconnected from the facts of this case, that officers were trained "to punch someone in the face if [he or she] did not cooperate during a routine traffic stop." (ECF No. 1-1 ¶¶ 89, 94.) These allegations fall well short of establishing a widespread pattern of constitutional violations that demonstrate deliberate indifference. Also, while Mr. Baker states that "officers employed by [Col.] Katz have a history of numerous complaints related to excessive force", (ECF No. 1-1 ¶ 94), he does not allege that any other individual officer was not properly disciplined. (*See generally*, ECF No. 1-1.) His sole specific assertion of a failure to discipline pertains to the case at bar: "[Col.] Katz failed to discipline [Officer] Stover for use of excessive force against Mr. Baker." (ECF No. 1-1 ¶ 100.) This post-facto failure cannot support his claim, as it cannot possibly have caused Mr. Baker's alleged February 3, 2023 injury at the hands of Officer Stover. *See, e.g.*, *Franklin v. City of Charlotte*, 64 F.4th 519, 537 (4th Cir. 2023) ("[T]he City Manager's post-facto approval of an internal shooting investigation cannot possibly have caused the constitutional violation.") Because Mr. Baker has failed to allege the minimum facts necessary to support a claim for failure to discipline, Count IX founders. *See, Green*, 2020 WL 2850177, at *13.

**C.    Mr. Baker Fails to State a Claim for Supervisory Liability Under 42 U.S.C. § 1983 (Count VII(b))**

The Court now turns to Count VII(b)—Mr. Baker's claim against Col. Katz in his individual capacity under a theory of supervisory liability.  Because Mr. Baker fails to allege sufficient facts to satisfy the first element of a supervisory liability claim, the Court will dismiss the remainder of Count VII.

### 1.    Legal Standard:  Supervisory Liability Under 42 U.S.C. § 1983

Under Section 1983, "supervisors can be held liable 'in their individual capacities' only for their personal wrongdoing or supervisory actions that violated constitutional norms." *Harbeck v. Smith*, 814 F. Supp. 2d 608, 626–27 (E.D. Va. 2011) (quoting *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) (unpublished per curiam opinion)).

To establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

The first element, which involves actual or constructive knowledge, can be satisfied by showing: "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Shaw*, 13 F.3d at 799.  "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions

18

and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (citations omitted).

The second element requires the plaintiff to show "deliberate indifference to or tacit authorization of the alleged offensive practices." *Shaw*, 13 F.3d at 799. A plaintiff may establish deliberate indifference by "demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.* (citations omitted). Establishing deliberate indifference involves carrying "a heavy burden of proof" because deliberate indifference cannot be established by "pointing to a single incident or isolated incidents." *Id.* To hold a supervisor liable under a tacit authorization theory requires pleading facts supporting the inference that the "supervisor fail[ed] to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place." *Danser v. Stansberry*, 772 F.3d 340, 350 (4th Cir. 2014) (citation omitted). Furthermore, the standard for establishing deliberate indifference recognizes that a supervisor cannot "reasonably be expected to guard against the deliberate criminal acts of . . . properly trained employees [with] no basis upon which to anticipate the misconduct." *Shaw*, 13 F.3d at 799 (citation omitted).

Finally, the third element requires a showing of causation. A plaintiff can show causation by demonstrating "an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Id.* (citation omitted). "This concept encompasses cause in fact and proximate cause . . . [and] may be supplied by [the] tort principle that holds a person liable for the natural consequences of his [or her] actions." *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368, 376 (4th Cir. 1984)).

## 2. Mr. Baker Fails to State a Claim for Supervisory Liability Under 42 U.S.C. § 1983

Mr. Baker fails to state a claim against Col. Katz under a theory of supervisory liability because his allegations pertain only to Officer Stover's February 3, 2023 arrest of Mr. Baker and do not include allegations of widespread or continuous abuse by Officer Stover.

Mr. Baker's supervisory claim fails at the first element of Section 1983 supervisory liability, which requires Mr. Baker to show "'that [Col. Katz] as the supervisor had actual or constructive knowledge that his subordinate [here, Officer Stover] was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff.'" *Baynard*, 268 F.3d at 235 (citation omitted) (quoting *Shaw*, 13 F.3d at 799); *see also Smith v. Town of S. Hill*, 611 F. Supp. 3d 148, 179 (E.D. Va. 2020).

Mr. Baker's allegations regarding this element are wholly inadequate and, yet again, amount to no more than formulaic recitations of his claim. Mr. Baker flatly alleges that "[Officer] Stover posed pervasive and unreasonable risk of constitutional injuries to citizens like Mr. Baker, of which [Col.] Katz had actual or constructive knowledge." (ECF No. 1-1 ¶ 97.) He further states in conclusory fashion that Col. Katz possessed "knowledge of [Officer] Stover's propensity to violate citizens' constitutional rights[.]" (ECF No. 1-1 ¶ 98.) Mr. Baker fails to provide *any* supporting allegation elaborating on Officer Stover's purported "propensity to violate citizens' constitutional rights", related risk of future misconduct, or Col. Katz's "actual or constructive knowledge" thereof. The Complaint fails to provide any concrete examples of Officer Stover's misconduct beyond his actions taken during Mr. Baker's February 3, 2023 arrest. This, of course, is insufficient to establish that Officer Stover's misconduct is "widespread, or at least has been used on several different occasions." *Shaw*, 13 F.3d at 799. Thus, even reading his allegations favorably, Mr. Baker's supervisory liability claim fails at

element one.  *See id.*; *Town of S. Hill*, 611 F. Supp. at 180 (granting motion to dismiss Section 1983 supervisory liability claim where plaintiff failed to establish element one).

### IV.  The Court Will Deny Leave to Amend at This Time

In his Opposition, Mr. Baker requests, in the alternative, that the Court grant him leave to file an amended Complaint.  (ECF No. 6, at 10.)  In his Reply, Col. Katz opposes this request on the basis that "[Mr.] Baker will not be able to cure the deficiencies in an amended pleading." (ECF No. 7, at 4.)

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, a "district court may deny leave to amend for reasons 'such as . . .  undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment[.]'"  *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards."  *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

Despite being on notice for months of his Complaint's severe deficiencies as identified in Col. Katz's briefing in support of his Motion to Dismiss, Mr. Baker has not provided the Court with a proposed Amended Complaint, or even a motion to file one.  The allegations at bar specific to Col. Katz are far too attenuated from the issues in this case to substantiate Mr. Baker's claims.  Mr. Baker's Opposition simply provides no basis upon which the Court may conclude that, if the Court granted leave to amend, Mr. Baker could successfully bolster any of his claims against Col. Katz under the applicable rules and accompanying standards.  Allowing an amendment at this nascent stage of litigation would cause undue prejudice to Col. Katz by

requiring him to file another round of responsive pleadings.  Thus, because any amendment would cause unnecessary delay and prejudice to Col. Katz, leave to amend will not be granted at this time.

### V.  Conclusion

For the reasons articulated above, the Court will grant the Motion without prejudice. (ECF No. 4.)

An appropriate Order shall issue.

Date: 9/6/24
Richmond, Virginia

_____
/s/
M. Hannah Lauck
United States District Judge